## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTIN SEALS FLYNN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **CIVIL ACTION NO. 17-029-CG-B** |
| | ) | |
| **CB&I MAINTENANCE, LLC and** | ) | |
| **CB&I, LLC**, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendants' Motion for Summary Judgment and Brief in support thereof (Doc. 89 and 89-1, respectively), Plaintiff's Response in opposition thereto (Doc. 91), and Defendants' Reply (Doc. 99). For the reasons explained below, the Court finds that Defendants' motion for summary judgment should be GRANTED.

## FACTS

This action arises as a result of Plaintiff, Christin Seals Flynn's ("Flynn") termination of employment with Defendants, CB&I Maintenance, LLC and CB&I LLC (collectively "Defendant" or "CB&I"). CB&I Maintenance, LLC provides warehousing services to UOP/Honeywell ("Honeywell") at Honeywell's warehouse located in Saraland, Alabama pursuant to a contract between CB&I and Honeywell. (Doc. 89-1 at 5). The Saraland warehouse distributes products manufactured by Honeywell. Honeywell Material Analyst Gregory Hendricks (Hendricks) plans the

1

daily activities at the Saraland warehouse, but CB&I hires employees to execute Honeywell's plans and assigns duties requested by Honeywell. (*Id*.)

Plaintiff applied for a position with Defendant CB&I Maintenance to be the Assistant Warehouse Supervisor at Defendant's facility located in Saraland, Alabama in October, 2014. (Doc. 1 at 2)[1]. The position was to supervise approximately fifteen (15) warehouse employees, to operate a forklift loading and unloading materials, and to assist in maintaining inventory. (*Id*.) Plaintiff was hired on October 6, 2014 and began work on October 20, 2014. (Doc. 89-3 at 3). The job had a 90-day orientation period. (*Id*. at 74).[2] Once hired, Plaintiff's immediate supervisor was Spencer Kunath ("Kunath") the Warehouse Supervisor and Kunath's immediate supervisor was Tim Beasley ("Beasley") the Warehouse Production Supervisor. (Doc. 1 at 2). From the time she was hired until her termination, Plaintiff was never informed that her work was unsatisfactory. (*Id*. at 3). On two occasions Plaintiff's work was rewarded; once, with a twenty-five-dollar gift card and once, with a flashlight. (*Id*.)

---

[1] Plaintiff filed an Amended Complaint on May 22, 2017, that identified the correct party Defendant, but was otherwise identical to her initial Complaint. (Doc. 23). For purposes of this Order, the Court will simply refer to Plaintiff's Complaint and all reference to the same will be cited to Plaintiff's initial Complaint (Doc. 1).
[2] Defendant indicates that Plaintiff's orientation period was extended due to her failure to successfully complete her first ninety-day orientation period, resulting in Plaintiff still being within the orientation period at the time of her termination. (Doc. 89-1 at 6). Plaintiff does not contest this assertion.

In the early afternoon of January 9, 2015, Plaintiff, while on the way to the restroom, walked passed the breakroom where three employees, Kenyell Thomas ("Thomas"), Tim Taylor ("Taylor"), and Chris Hood ("Hood") were engaged in a very loud conversation which Plaintiff believed to be an argument or debate of some kind. (*Id.*) Thomas stopped Plaintiff and said he wanted her opinion regarding a rumor and then stated in a loud voice, "We are going to get your opinion" and "If a man was accused of rape would you still let him babysit your daughter?" (*Id.* at 4). Plaintiff ignored Thomas and continued walking at which point Thomas persisted "No, I'm serious. I want you to tell [Taylor] what your opinion is." (*Id.*) Plaintiff responded, "My God ya'll" in an effort to end the conversation and turned to leave the room." (*Id.*) Thomas again persisted and in an aggressive tone[3] continued, "No, I'm serious", "Now everybody knows Tim likes you and wants to fuck you." (*Id.*) Thomas then turned to Taylor and said "If I told you that Christin had AIDS would you still f*ck her?" *(Id.)* Plaintiff was "stunned" and tried to leave which caused Thomas to become more animated and to again loudly repeat his question to Taylor. (*Id.*) Plaintiff then told Thomas that he needed to stop speaking in that language, that it was inappropriate in the workplace, and that she did not appreciate him

---

[3] In support of her response, Plaintiff has filed an affidavit that characterized Thomas as having an "aggressive physical stance" which gave Plaintiff cause for concern. (Doc. 91 at 2; Doc. 91-8 at 3). Defendant has moved to strike the affidavit in its Reply (Doc. 99). However, this Court need not determine whether Plaintiff's affidavit should be stricken, because its contents do not alter the outcome of this Order.

using her in his question to Taylor. (*Id.*) Taylor also stated that he did not appreciate the remark. (*Id.*) Hood, who had been in the room when the comments were made shook his head and left the room. (*Id.*)

Plaintiff felt she had a duty to report the conversation and immediately reported Thomas' comments to Kunath by stating something to the effect of "Look, something has happened. I need to bring it to your attention. I don't know how you handle things like this but this needs to be addressed immediately" and then described the conversation (as stated above). (*Id.* at 4-5). According to Plaintiff, Kunath seemed frustrated and/or annoyed and responded only by stating "okay". (*Id.* at 5). Taylor also reported the conversation to Kunath. (*Id.*) Kunath spoke with Thomas the same day about his comments to Plaintiff and Taylor. (Doc. 89-6 at 31).

At some point later in the afternoon, Thomas approached Plaintiff and said something to the effect of "Look, I didn't know it was going to offend you." (Doc. 1 at 5). Plaintiff responded that "We are not going to have this in the workplace", but found Thomas' behavior to be aggressive and his apology disingenuous. (*Id.*) Afterwards, Taylor approached Plaintiff and told her that she did the right thing by reporting the conversation to Kunath, but he feared that Plaintiff might consequently suffer. When Plaintiff asked what Taylor meant, he replied "Well, Kenyall [Thomas] is like a pet around here. But if they fire you they will be wrong." (*Id.*)

Kunath did not memorialize or report the January 9, 2015, incident to Human Resources or to any supervisor contemporaneously with the incident. (*Id.*) Later in the afternoon, however, Kunath drafted a memorandum describing Plaintiff's and Taylor's reporting the conversation to him, his conversations with Thomas about the problem with his remarks, and Thomas' apologizing for his actions. (Doc. 89-6 at 26-27, 31).

On the morning of Tuesday, January 13, 2015[4], the second work day following the incident, Plaintiff was told by an employee that Kunath wanted to speak with Plaintiff in the office and when Plaintiff went to the office, Kunath and Beasley were present and informed her that, "After further evaluation, we do not think your employment here at CB&I is going to work out." (*Id.*) Plaintiff responded, "you're joking right? What made you come to this decision?" and stated that she had done her job and felt that she had excelled. (*Id.* at 6). Kunath asked for Plaintiff's badge and told her to gather her belongings and return to the office. (*Id.*) Plaintiff was asked to sign a to-be-written termination letter stating that the job was bigger than Plaintiff could perform, that the employer was dissatisfied with her performance, and that Plaintiff was unable to perform her job duties. (*Id.*) Plaintiff refused to sign the described letter and was then given a form to sign that was described as an acknowledgment of termination of employment. (*Id.*) Plaintiff signed the document which stated the reason for separation as "Job is bigger than

---

[4] Plaintiff's Complaint incorrectly indicates Monday, January 13, 2015, but Plaintiff has clarified the correct date in her Response. (Doc. 91 at 3)

EE can perform. EE is not the right person for the job. Client is not happy with EE performance." (Doc. 89-4 at 29). The notice included a performance review where Plaintiff was rated one to five in several performance categories, five being the highest. (*Id*.) Plaintiff was given a five in safety, attendance, dependability, and cooperation; a three in initiative; and a two in job knowledge, quality of work, and productivity. (*Id*.)

Prior to January 13, 2015, Plaintiff's job performance was discussed between Kunath, Beasley, Hendricks, Rhonda Valliant[5], and Angela Hardee ("Hardee")[6]. (Doc. 89-6 at 2-4; Doc. 91-4 at 20). In November, 2014, Hendricks complained to Kunath about the amount of time it took Plaintiff to load a flatbed full of barrels with the fork lift. (Doc. 89-1 at 8-9; Doc. 89-6 at 6). Also, in November, Kunath – referring to using the forklift - commented to Plaintiff that she needed to "speed it up."[7] (Doc. 89-3 at 20). Hendricks also complained of Plaintiff to Kunath on two occasions for her failure to accurately count inventory. (Doc. 89-5 at 8). Prior to her termination, Kunath also received a complaint against Plaintiff from another employee, Melanie Turner ("Turner"), relating to Plaintiff's handling of a situation

[5] Valliant held a human resources position at CB&I. (Doc. 91-4 at 20-21).
[6] Hardee held the position of Assistant Warehouse Supervisor prior to Plaintiff and her vacating the position for another position which led to Plaintiff being hired. (Doc. 89-7 at 1).
[7] Defendant refers to this conversation as "counseling", while Plaintiff testified that Kunath simply made a comment in passing. Either way, it is undisputed that operating the forklift was part of Plaintiff's responsibilities and that Kunath commented to Plaintiff about her efficiency on the forklift prior to her termination.

with another employee that resulted in the other employee being very upset and crying. (Doc. 89-4 at 27). According to Kunath, on January 9, 2015, between 6:00 a.m. and 9:00 a.m., Hendricks complained to him about Plaintiff and expressed concerns that Plaintiff should be more knowledgeable about the daily functions of the warehouse as an assistant warehouse supervisor. (Doc. 89-6 at 21, 35). The same morning, Kunath spoke with Angela Hardee about Plaintiff's performance and Hardee expressed that Plaintiff's performance was deficient because of issues with counting inventory, mislabeling shipments, leading others, and her inability to understand instructions provided to her during on-the job training. (Doc. 89-7 at 2). Following his conversation with Hendricks and Hardee, Kunath drafted a memorandum relating to Plaintiff's performance issues that included Hendricks' comment that CB&I needed to find someone "who can handle the job." (Doc. 89-6 at 35).

On January 12, 2015, Kunath contacted Human Resource Manager Rhonda Valliant and Beasley and notified them of Hendricks' and Hardee's complaints relating to Plaintiff's performance. (Doc. 89-6 at 2-3). He also attached a copy of his memorandum relating to Plaintiff's performance concerns to an email he sent to Valliant on January 12, 2015. (Doc. 89-6 at 33). Kunath, Valliant, and Beasley discussed Plaintiff's employment and Kunath recommended Plaintiff's termination, which was accepted and approved by Valliant and Beasley. (Doc. 89-6 at 23). Neither Beasley nor Valliant was aware of the incident between Plaintiff and

Thomas at the time they decided to terminate Plaintiff. (Doc. 89-4 at 5; Doc. 89-6 at 14). Beasley testified that prior to Plaintiff's termination, Hendricks also told him that he wanted Plaintiff removed from her position. (Doc. 99-8 at 2). As part of the investigation of Plaintiff's claims, Hendricks provided a statement to the Equal Employment Opportunity Commission ("EEOC") and was deposed. (Doc. 91-2, generally; Doc. 91-2 at 28-29). Both his statement and his deposition testimony indicate that Hendricks never requested that Plaintiff be terminated. (*Id*.)

At the time of Plaintiff's hiring and termination, CB&I had a policy that addressed harassment and sexual harassment. Section III of the company policy defines "sexual harassment" in part as verbal conduct of a sexual nature where such conduct has the effect of "creating an intimidating, hostile or offensive work environment." (Doc 91 at 18-19; Doc. 91-5 at 121). The term "harassment" is defined in the policy as including "verbal" conduct that creates an intimidating, offensive or hostile working environment. (Doc. 91-5 at 121). Harassment is defined to include remarks made for the purpose of belittling or insulting someone on the basis of, among other things, sex or gender or on any other applicable protected basis. (*Id*.) The policy makes it mandatory for an employee who encounters workplace harassment or discrimination from any person or from co-workers to immediately report the conduct to management. (*Id*.) Defendant also had a code of conduct listing procedures for the prevention of harassment, discrimination and retaliation in the workplace. (*Id*. at 122). Under Section 1.2, "Harassment" is

defined as the "unwanted and bothersome actions of one party or group towards another, including threats and demands that are generally considered offensive, intimidating and/or disturbing. This may be systemic and/or continued or a singular event, if sufficiently severe or hostile" (emphasis added). (*Id.*)  There is no dispute that these policies were in effect or that Plaintiff was made aware of them prior to January 13, 2015.  (Doc. 91 at 4; Doc. 89-3 at 11-17).

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as

otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## B. Sexual Harassment[8]

Plaintiff has not specifically identified a claim for sexual harassment in her Complaint. However, the Complaint does include a Preliminary Statement which states "Plaintiff files this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., seeking declaratory, injunctive and equitable relief; back pay, reinstatement, front pay, compensatory and punitive damages; and costs and attorney's fees for sexual harassment and retaliation suffered by Plaintiff

---

[8] Defendant asserts that Plaintiff may have also attempted to plead a sex discrimination claim. (Doc. 89-1 at 29-30). However, unlike the sexual harassment claim, a sexual discrimination claim is not even referenced in the Complaint/Amended Complaint and Plaintiff makes no mention of such a claim in her Response. Accordingly, it is apparent that Plaintiff has not properly pled a sex discrimination claim.

as a result of her employment with Defendant." (Doc. 23 at 1). Based on the same, Defendant seeks dismissal of any claim of sexual harassment that has been alleged because Plaintiff has not presented any facts to support such a claim. More specifically, Defendant asserts dismissal is warranted because Plaintiff has not shown that the comments at issue were directed at her based on her gender and because the comments made were not sufficiently severe or pervasive so as to create a hostile work environment in violation of Title VII. (Doc. 89-1 at 15-20). Alternatively, Defendant argues that if Plaintiff has established a prima facie case of sexual harassment, the claim would still be barred by the *Faragher-Ellerth* defense. (*Id*. at 20-23). Plaintiff's response does not clarify whether she is, in fact, alleging a claim of sexual harassment[9] and does not address the arguments raised by Defendant with regard to dismissal of the same.[10]

---

[9] Plaintiff's response does make one comment that "she believes she was terminated on the basis of her sex and subjected to sexual harassment". (Doc. 91 at 18). This comment however, appears to be solely in response to Defendant's argument that Plaintiff did not subjectively believe she was sexually harassed based on her failure to follow company policy to report the incident in relation to the retaliation charge.

[10] The Court will still address this claim because "[s]ummary judgment is not automatically granted by virtue of a non-movant's silence." *Williams v. Aircraft Workers Worldwide, Inc.*, 832 F.Supp.2d 1347, 1352 (S.D. Ala. 2011). If a nonmovant fails to respond to a portion of a summary judgment motion, then the court may deem the movant's assertions of fact as to that portion "undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Rule 56(e)(2), Fed.R.Civ.P. In performing such an analysis, a court is not obligated to read minds or to construct arguments or theories that a party failed to raise. *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties"); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009)

To establish a sexual-harassment claim Plaintiff must show that: (1) she belongs to a protected group; (2) she has been subject to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe to alter the terms and conditions of her employment; and (5) there is a basis for holding the employer liable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). To be actionable under Title VII, a hostile work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1247 (11th Cir. 2004) (internal quotes omitted). In the objective prong of a "severe and pervasive" inquiry, courts examine factors such as "the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance." *Johnson v. Booker T. Washington Broadcasting Service, Inc.,* 234 F.3d 501, 509 (11th Cir.2000) (citation and internal quotation marks omitted). "[N]o single factor is determinative, and either severity or pervasiveness can satisfy the element, if sufficient." *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F.3d 1139, 1146 (11th Cir. 2008) (citations omitted). However,

---

(noting that a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions") (citation omitted).

"sexual language and discussions that truly are indiscriminate do not themselves establish sexual harassment under Title VII." *C.H. Robinson Worldwide, Inc.*, 594 F.3d 796, 809 (11th Cir. 2010) (citations omitted). Moreover, "Title VII is not a civility code, and not all profane or sexual language or conduct will constitute discrimination in the terms and conditions of employment." *Id.* at 807.

To the extent that Plaintiff has stated a sexual harassment claim, the record fails to establish that such a claim can survive past the summary judgment stage. First, Plaintiff has not shown that the comments were directed to her based on her sex. Second, as a matter of law, the conduct that Plaintiff alleges was sexual harassment, i.e. comments made by Thomas regarding (1) whether Plaintiff would allow someone to babysit her daughter who was accused of but found not guilty of rape and (2) whether another employee (Taylor) would engage in sex with Plaintiff if she had AIDS, is not so objectively severe and pervasive as to create a jury question as to whether a hostile work environment existed that would violate Title VII. *See Mendoza*, 195 F.3d 1238.[11]

Despite the sexual nature of the comments made, it is undisputed that Thomas directed his comments to both Plaintiff and another *male* employee,

_____

[11] Court held the following conduct insufficiently severe and pervasive to sustain a Title VII claim: "(1) one instance in which [a supervisor] said to plaintiff, 'I'm getting fired up'; (2) one occasion in which [supervisor] rubbed his hip against [plaintiff's] hip while touching her shoulder and smiling; (3) two instances in which [supervisor] made a sniffing sound while looking at [the plaintiff's] groin area, and (4) [the supervisor's] "constant" following and staring at [Plaintiff] in a "very obvious fashion."

diminishing a causal relationship between the comments and Plaintiff's gender. Further, while Plaintiff now asserts that she believed she was sexually harassed because the comments were directed at her as a woman and were made in a room with only males, the record does not support her conclusory statements. (Doc. 91-8).[12]  Specifically, when asked whether she believed Thomas made the comments to Plaintiff because of her gender, Plaintiff responded "I don't know".  (Doc. 89-1 at 103-104).  As a result, Plaintiff has not established a question of fact from which a jury could find that the comments were based on Plaintiff's gender.  *See Reeves*, at 809 ("sexual language and discussions that truly are indiscriminate do not themselves establish sexual harassment under Title VII.).

Even assuming the comments were made to Plaintiff because of her status as a woman, her claim of sexual harassment would still fail because Plaintiff has not established that those comments created a hostile work environment.  While Plaintiff states that she "perceived" the comments to be sexual harassment, the record fails to offer any support for her position.  Specifically, it is undisputed that immediately after the comments were made, Plaintiff did not report being "harassed", "sexually harassed", or subjected to a hostile work environment.  (Doc. 1 at 4-5).  Further, after describing the incident to Kunath in the manner that she did and becoming aware of Kunath's failure to reprimand Thomas beyond a verbal counseling, Plaintiff made no effort to further pursue her complaint despite the fact

---

[12] See FN 3.

that Plaintiff was aware of company policy which provided additional avenues to report alleged harassment. (Doc. 91 at 4, 18-20; Doc 89-3 at 11-17). Further, because it is undisputed that the comments were made on only one occasion and because Plaintiff was not physically threatened[13] and returned to work following the comments without any evidence of difficulty, there are no facts to suggest that the incident interfered with Plaintiff's work environment.[14] As a result, considering the facts in a light most favorable to Plaintiff, the conduct Plaintiff complains of does not rise to the level of severe and pervasive sexual harassment actionable under Title VII. Accordingly, to the extent that Plaintiff properly pled a claim of sexual harassment, Defendant's Motion for Summary Judgement as to that count is due to be granted.[15]

## C. Retaliatory discharge

"To establish a prima facie case of retaliation under Title VII, 'a plaintiff must show that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the

---

[13] Plaintiff's characterization of Thomas as having an aggressive physical stance (*see* FN 3) does not corroborate that Plaintiff was actually physically threatened.
[14] When asked whether Plaintiff returned to work the day after the incident, she replied, "I did" and when asked whether she went "back to doing good work" she replied "Of course". (Doc. 89-3 at 39).
[15] Defendant alternatively asserts that had Plaintiff sufficiently pled a sexual harassment claim, the same would still be defeated because Defendant has properly established a *Faragher-Ellerth* affirmative defense. For the reasons set forth herein above, this Court need not analyze Defendant's alternative grounds for dismissal. However, it is worth noting that Plaintiff has, again, failed to respond to the affirmative defense arguments raised in Defendant's motion.

protected activity and the adverse employment action.'" *Thomas v. Cooper Lighting, Inc.*, 506 F. 3d 1361, 1363 (11th Cir. 2007) (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)(internal citations omitted). Statutorily protected expression includes filing complaints with the EEOC and complaining to superiors about sexual harassment. *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F. 3d 501, 507 (11th Cir. 2000) (*citing to Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989) ("[T]he protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like [appellant], who informally voice complaints to their superiors or who use their employers' internal grievance procedures.").

Defendant contends that summary judgment is due to be granted on Plaintiff's retaliation claim because Plaintiff has failed to establish that she engaged in a protected activity. (Doc. 89-1 at 25). Alternatively, Defendant argues that it had legitimate, non-discriminatory reasons for terminating Plaintiff that were not pretextual. (*Id*. at 27-29). In response, Plaintiff asserts that she engaged in a statutorily protected activity relying, in part, on the fact that she does not have to prove that the conduct she opposed was actually unlawful or rose to the level of sexual harassment and, instead must only show that her belief that the Defendant engaged in unlawful employment practice was reasonable when measured against existing substantive law. (Doc. 91 at 16). Plaintiff additionally argues that the

cases cited to by Defendant are not on point.  For support, Plaintiff relies on CB&I's company policies which define "harassment" and "sexual harassment" to show that the comments made by Thomas subjected Plaintiff to unlawful harassment, in this case, sexual harassment.  Specifically, Plaintiff asserts that "[t]he very policy of CB&I supports both Plaintiff's subjective and objective belief that the conduct that she was subjected to rose to the level of sexual harassment thus triggering a duty to report and making the report constitutionally protected activity. Plaintiff was aware of Defendant's personnel policies and believed she had a duty to report the incident that she perceived as sexual harassment. Plaintiff believed that the incident constituted sexual harassment as she was in a room with only male co-workers and the shocking and gross language itself was directed at her as a woman." (Doc. 91 at 23-24)(internal citations omitted).

## 1.    Protected Activity

In order for Plaintiff to demonstrate that she engaged in a protected activity, she must "show[ ] that [s]he had a good faith, reasonable belief that the employer is engaged in unlawful employment practices." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010)(citation omitted).  Plaintiff's belief that she engaged in a protected activity must also be objectively reasonable. (*Id*.)  Moreover, "[t]he reasonableness of a plaintiff's belief that her employer engaged in an unlawful employment practice must be measured against existing substantive law." (*Id*. at 1245).

Plaintiff's position that she engaged in protected activity is not compelling. First, as discussed herein above, Plaintiff conclusively states that she believed she was sexually harassed at the time the incident occurred, but the record does not support her position. Plaintiff did not report that she was "harassed" or more specifically, "sexually harassed" to Kunath and she did not report that Thomas' comments subjected her to some kind of hostile work environment. Instead, Plaintiff described the conversation to Kunath after stating something to the effect of "I don't know how you handle things like this…". (Doc. 1 at 4-5). While Plaintiff argues that her reporting the incident to Kunath substantiates her belief that the conduct was sexual harassment based on her familiarity with company policy, the reporting of the incident, alone, does not wholly confirm her *reason* for reporting the incident, i.e., her belief that the incident was sexual harassment versus inappropriate behavior. This distinction is more significant in Plaintiff's case because Plaintiff was Thomas' supervisor and she testified that she did not document the incident and that in hindsight she should have looked into the policy she relies on, to determine whether she could have initiated a more formal type of reprimand herself. (Doc. 89-3 at 31-33). Accordingly, the manner in which Plaintiff reported the incident, in fact, does not confirm that she subjectively believed the comments amounted to sexual harassment. Further, even after Thomas apologized and Plaintiff was informed that Kunath had not disciplined Thomas, Plaintiff did not further complain that she was sexually harassed or that Thomas should have

been disciplined for sexual harassment via any other avenue for reporting potential

sexual harassment per company policy. Instead, Plaintiff testified that once

Kunath spoke with Thomas and after Thomas apologized, she felt the incident had

been handled. (Doc. 89-3 at 39). "A complaint about an employment practice

constitutes protected opposition only if the individual explicitly or implicitly

communicates a belief that the practice constitutes unlawful employment

discrimination." *Murphy v. City of Aventura*, 383 Fed.Appx. 915, 918 (11th Cir.

2010) (employee's internal complaint that supervisor had used "vulgar,

inappropriate language" and had engaged in "bullying" was not protected activity

where she did not complain that such conduct "was sexually hostile or sexually

harassing")[16]. While Plaintiff asserts that the cases cited by Defendant are

factually distinguishable from the facts of her case, the rationale used by the Courts

in those cases hold true. Specifically, in *Equal Employment Opportunity

Commission v. Shoney's Inc.*, 536 F.Supp. 875 (N.D. Ala. 1982), while the facts are

dissimilar, the Court found that Plaintiff did not engage in protected activity

because he never complained to anyone at Shoney's [his employer] that his

girlfriend's discharge was illegal, unlawful, or in violation of Title VII. Similarly,

here, Plaintiff failed to complain that she experienced sexual harassment or

---

[16] In *Murphy*, the Plaintiff alleged that her supervisor called Plaintiff a "dumb shit," "stupid fuck," "stupid shit," "dumb fuck" and "goddamn slut." *Id*. at 917. The Court found that the plaintiff was not engaged in protected activity as the plaintiff failed to report the conduct formally or informally to her employer and because she did not complain that the conduct was sexually hostile or sexually harassing. *Id*.

behavior that believed was illegal, unlawful, or in violation of Title VII. The same is true for *Murphy v. City of Aventura*, 616 F.Supp 2d 1267 (S.D. Fla. 2009), where the Court's decision was based, in part, on Plaintiff's failure to complain that the conduct at issue was sexually hostile or sexually harassing. In this instance, the record is clear that Plaintiff did not complain that she was sexually harassed when she reported the incident to Kunath.[17] She also failed to further pursue her complaint pursuant to company policy once it became apparent that Kunath had no intentions of further investigating or reprimanding Thomas. As a result, the facts of the present case do not support Plaintiff's contention that at the time the comments were made she subjectively believed they constituted sexual harassment.

Nevertheless, even if Plaintiff had established that she subjectively believed that she was sexually harassed, her claim would still fail if she could not show her subjective belief was objectively reasonable when measured against existing substantive law. *See Howard*, 605 F.3d at 1245. To that end Plaintiff relies on her reporting of the incident and CB&I company policy to show objective reasonableness. (Doc. 91 at 16-20).

---

[17] This Court is not of the position that a failure to use the proper terms when reporting inappropriate behavior pursuant to Title VII will always result in dismissal. However, the manner in which the complaint was made by the complaining party is an indication of that party's subjective belief. Thus, like in *Murphy* and *Shoney*, Plaintiff's failure to complain that she believed she was sexually harassed- or the like- given the factual allegations of this case, is an indicator that Plaintiff did not subjectively believe she was sexually harassed, a requirement for her claim to survive.

Based on the facts of this case, the Court finds that an employee in Plaintiff's position could not reasonably believe that a Title VII sexual harassment claim would be supported by the comments that were made to both Plaintiff and another male employee on a single occasion. While a single incident, if extraordinarily severe, may constitute harassment as Plaintiff urges (see Doc. 91 at 19 *citing to Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998); *Cruz v. Coach Stores, Inc.*, 202 F.3d at 570 (2nd Cir. 2000), Plaintiff does not offer any legal support wherein the facts are substantially similar to those in the instant action and support her position the conduct about which Plaintiff complains is objectively extraordinarily severe. Rather, as discussed herein above, substantive caselaw reveals that actions more severe than those complained of by Plaintiff have been held not to constitute sexual harassment as a matter of law. *See Mendoza*, 195 F.3d 1238; *See also Roberson v. BancorpSouth Bank, Inc.*, 2013 WL 6254108, *9 (S.D. Ala. December 4, 2013)( "[A]lleged harassing conduct (i.e.,[Employee] commenting about the "hotness" of female employees, discussing Viagra on one occasion, giving a Viagra pill to plaintiff's husband on one occasion, sending joke emails with punchlines about "the pricks in your life" or "I be yankin' off alone," and forwarding "People of Wal–Mart" emails) falls far short of the requisite objective severity and pervasiveness.")

Lastly, Plaintiff's reliance on CB&I company policy to show that the conduct was objectively unreasonable is misguided as the same is not the appropriate tool

by which to measure reasonableness in this Circuit. As a result, even if Plaintiff had a subjective belief that she was exposed to sexual harassment, the belief was not objectively reasonable in light of the facts of the present case and substantive case law and, accordingly, Plaintiff has failed to establish that she engaged in protected activity.[18]

## 2.  Causal Connection

Assuming arguendo that Plaintiff has established that she engaged in a protected activity, she would still need to establish that the protected activity and the adverse action were casually related. *Thomas*, 506 F. 3d at 1363. To establish a causal connection between participation in a protected activity and adverse employment action, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (quotations omitted). To make this showing, a plaintiff must generally establish "that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id.* "[C]lose

---

[18] Defendants' alternatively assert that Plaintiff was not engaged in a protected activity because of the "manager rule". (Doc. 89-1 at 26). The "manager rule" was described in *Brush v. Sears Holdings Corp.*, 466 Fed.Appx. 781, 787 as follows: "a management employee that, in the course of her normal job performance, disagrees with or opposes the actions of an employer, does not engage in 'protected activity.'" Instead, to qualify as "protected activity" an employee must cross the line from being an employee "performing her job ... to an employee lodging a personal complaint.". *Id.* citing to *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir.1996); *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617 (5th Cir.2008). Based on the findings above, the application of the "manager rule" in this action need not be analyzed in full. However, the Court notes that the facts of this case when taken in a light most favorable to Plaintiff would, at the very least, create a question of fact as to whether Plaintiff was acting in her role as a manager such that summary judgment would not be warranted on that ground.

temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Id*.

Plaintiff asserts that a causal connection exists because her termination was discussed on January 9, 2015, the same day she complained of Thomas's remarks to Kunath and because she was formally terminated on January 13, 2015, just two days after the complaint was made. (Doc. 91 at 21). Defendant did not raise an argument with regard to causal connection in its motion for summary judgment, but in its Reply (Doc. 99) it has pointed out that the discussions of Plaintiff's termination on January 9, 2015, took place hours *before* Thomas' remarks were made or Plaintiff complained and that it is undisputed that two of the three persons responsible for Plaintiff's termination were wholly unaware of Thomas' remarks or Plaintiff's complaining of the same at the time Plaintiff was terminated. (Doc. 99 at 5). In support of its position, Defendant has provided a typed document drafted by Kunath that memorialized problems with Plaintiff's performance and indicated a need to "find someone who can handle the job". (Doc. 99-5 at 7-8; Doc. 99-5 at 9). Kunath has testified that he drafted the memorandum between 6:30a.m. and 9:00a.m. on January 9, 2015. (Doc. 99-5 at 7-8).

In response, Plaintiff does not dispute that two of the decision makers, Beasley and Valiant, were unaware of the incident prior to her termination. Rather, Plaintiff has called into question whether Kunath, in fact, drafted the

memorandum prior to Plaintiff's reporting of Thomas' comments and to that end, Plaintiff points to the deposition testimony of Rhonda Valliant wherein Valliant admits that she was unaware of the memorandum before January 12, 2015, and that as of the date of her deposition, CB&I had not been able to confirm the date the document was created. (Doc. 91 at 11-12). However, Valliant's testimony does not actually contradict Kunath's testimony that he drafted the document prior to Plaintiff's complaints being made. There is also a lack of facts from which a jury could conclude that Kunath's testimony as to when he drafted the memorandum is untruthful or even mistaken. As a result, there are no facts to rebut that Plaintiff's performance concerns, including the need to possibly replace Plaintiff, were considered by Kunath prior to the alleged protected activity occurring. "When an employer makes a tentative decision before protected activity occurs, the fact that an employer proceeds with such a decision is not evidence of causation." *Saffold v. Special Counsel, Inc.*, 147 Fed.Appx. 949, 951 (11th Cir. 2005) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001))( holding that when an employer contemplates a given action before the harassment takes place, temporal proximity between the action and the incident of harassment alone will not suffice to show causation. ) *See also Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227 (11th Cir. 2006). Further, no causal connection can be made between Plaintiff's termination and the other two decision makers' action because they were wholly unaware of Plaintiff's allegedly protected activity.

As a result, the facts in this action simply do not support the causal link between Plaintiff's complaints and her termination based solely on temporal proximity.

### 3.     Pretext

Despite the above conclusions, the Court finds it necessary to address the final argument posed by Plaintiff, i.e., that the reasons set forth by Defendant for terminating Plaintiff are pretextual.[19]

Assuming Plaintiff has established a prima facie case of retaliation, the Defendant is entitled to articulate a legitimate business reason for the actions as an affirmative defense to liability. *Goldsmith v. Bagby Elevator Co. Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).   Should the Defendant carry this burden, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'"   *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (citations omitted).   A Plaintiff may show that an employer's reasons are pretextual by demonstrating such "weaknesses, implausabilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them

---

[19] The Court does so, in part, because a significant portion Plaintiff's response was dedicated to this one issue and it has been fully briefed.

unworthy of credence.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th

Cir. 1997); *See also Chapman*, 229 F.3d 1012.

Assuming Plaintiff has established a prima facie case of retaliation (which

she has not), Defendant asserts that Plaintiff was terminated based on non-

discriminatory performance concerns.  Namely, concerns over Plaintiff's ability to

oversee and conduct inventory, count inventory, label shipments, and understand

the daily functions of the Saraland warehouse. (Doc. 89-1 at 28).  Therefore, it is

Plaintiff's burden to show that the proffered non-discriminatory reasons provided by

Defendant are pretextual.  Plaintiff asserts that pretext is apparent based on the

number of contradictions in testimony between Hendricks, Beasley, Kunath, and

Valliant over Plaintiff's termination, but most notably, because Beasley's testimony

was unequivocal that but for a client request, Plaintiff would not have been fired

and Hendricks' testimony that he, the client, did not request that Plaintiff be fired.

(Doc. 91 at 22-24).  Plaintiff asserts the contradictions on record also call into

question whether the other performance concerns proffered by Defendant are

legitimate.   Lastly, Plaintiff contends that pretext is established by the safety

rating given to Plaintiff on her separation notice because Plaintiff was given the

highest rating, which negates Beasley and Kunath's position that Plaintiff was

terminated, in part, due to safety concerns.  (*Id*. at 23).  For support, Plaintiff relies

on *Everett v. Lake Martin Area United Way*, 46 F.Supp.2d 1233, 1237 (M.D. Ala.

1999), where the Court held that there is an inference of pretext when the

employment decision involves the employee's performance but there is no supporting documentation of performance concerns prior to termination. (Doc. 91 at 22).

Plaintiff's position is not compelling and the contradictions pointed out by Plaintiff do not sufficiently establish pretext. Even taking into consideration the contradictions in the testimony of Beasley, Hendricks, Kunath, and Valliant, and the safety rating given to Plaintiff on her separation notice there remain several incidents relating to Plaintiff's performance that were discussed prior to her termination that are not contradicted. Specifically, prior to Plaintiff's termination, Hendricks commented to Kunath that Plaintiff had made errors counting inventory on two occasions (Doc. 89-5 at 5-6), co-workers complained to Kunath about the manner in which Plaintiff handled an issue with another employee (Doc. 89-4 at 27), and Hardee had a conversation with Kunath about Plaintiff's performance deficiencies, including her inaccurate count of inventory, mislabeling of shipments, lack of leadership qualities, and inability to grasp the instructions (Doc. 89-7 at 2). Plaintiff has not presented evidence to rebut these performance issues. Further, Plaintiff's reliance on Beasley's testimony that Plaintiff would not have been fired but for Hendrick's request that she be fired and Hendricks' testimony that he did not make such a request to Kunath does not establish pretext, when it is wholly undisputed that neither Beasley nor Hendricks had any knowledge of the incident between Plaintiff, Thomas, and Taylor -- much less knowledge that Plaintiff

reported the incident. Thus, despite the contradictions established by testimony after-the-fact as to whether or not Hendricks informed Kunath that Plaintiff should be terminated, it remains that at the time Plaintiff was terminated, Beasley (a decisionmaker) understood that Hendricks had made such a request and had no knowledge of Plaintiff's complaints against Thomas. The same holds true for Valliant (another decisionmaker), who at the time of the termination was under the impression that Plaintiff had multiple performance deficiencies and that Hendricks had requested termination and who had no knowledge of Plaintiff's incident or her reporting of the same. Plaintiff cannot merely rely on contradictions, she must show that those contradictions support that the real reason she was terminated was based on her allegedly protected activity. *See Chapman, supra.* With regard to Beasley and Valliant, Plaintiff has not established pretext.

Lastly, as has been discussed above, Plaintiff has not offered any evidence that Kunath's memorandum detailing Plaintiff's performance issues was not written before Plaintiff's incident occurred - as Kunath testified. Further, to the extent that Plaintiff has called into question Kunath's veracity in reporting Hendricks' request that Plaintiff be terminated to Beasley and Valliant, the same would not negate the reasons provided by Defendant for Plaintiff's termination because the record reflects that Beasley did not solely rely on Kunath's comments. Rather, Beasley testified that Hendricks also told him, personally, that he wanted Plaintiff removed or returned to a class one employee. (Doc. 99-8 at 2). As a result,

while a question of fact exists as to whether or not Hendricks requested that Plaintiff be terminated, the facts when considered in a light most favorable to Plaintiff, i.e., that Hendricks's deposition testimony is true and he did not tell Kunath that Plaintiff should be removed and that Kunath's statements to Beasley were untruthful, there is still no indication of pretext because Beasley was under the impression that Hendricks wanted Plaintiff removed based on his own independent conversations with Hendricks, not based on Kunath's reporting of Hendricks' desire. Lastly, unlike in *Everette, supra*, prior to Plaintiff's termination there were two memoranda drafted by Kunath detailing problems with Plaintiff's performance, both of which support the proffered reasons for termination. (Doc. 89-6 at 35; Doc. 91-5 at 112). There is also evidence that Kunath spoke with Plaintiff on one occasion regarding the amount of time Plaintiff took while operating the forklift[20] and there is no dispute that the client commented on Plaintiff's improperly counting inventory on two occasions. As such, it cannot be said that there is no evidence of concerns with Plaintiff's performance.

In this action, even if Plaintiff had established that she engaged in protected activity that was causally related to her termination, dismissal would still be warranted because there is no question of material fact to support that the reasons proffered by Defendant for Plaintiff's termination were pretextual.

---

[20] See FN 5.

**CONCLUSION**

For the reasons stated above, the Defendant's motion for summary judgment

is be **GRANTED**.

     **DONE** and **ORDERED** this 30th day of July, 2018.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE